Oh, I appreciate your stepping up to the plate, Mr. Bragelow. Good morning. You may proceed. Thank you, Your Honor. Thank you for your support. The file editor presented this report to supply the recapture rule, as clarified by the scores opinion in the NDA. In your ruling, Mr. Conrad, you are designed to prevent a patentee from concealing a rejection. NBO teaches that when you look for an abandoned subject matter, you look beyond the immediate patent, from which the reissued claims emerge. After a rejection or a surrender of claims, though, some applicants prior to NBO would look for new applications to obtain a patent with no claims, and follow that with a reissued patent that would seek to recapture subject matter that is not shown in the patent, from which the reissued claims emerge. Mr. Bragelow, why don't you have a problem with recapture based on the prosecution of the 585 patent itself? We don't, Your Honor, because the TEOS reactant was never relied upon as presenting novel properties to the structure of the device. That would seem to me perhaps to be an accurate reading of the prosecution, because there are in which there is a suggestion that this is distinguishable over the thermally applied oxide, because of the method of application using TEOS. Well, the method of application is, of course, low-pressure chemical vapor deposition, and that was relied upon as significant. That limitation was not removed in the reissues. Well, I think actually the both were referred to, weren't they? I mean, that seems to me pretty clear from the legislative history, from the prosecution history, that they referred to the Owen Declaration and the physical difference between a layer of thermally blown oxide and a layer of TEOS-deposited oxide. And the manner is claimed in 113. That's at 630 to 631 of the appendix. Your Honor, but I think what this Court's opinions in recapture cases teach in particular, for example, King v. Conagher, is that you must look further and see whether that was actually relied upon. What happened to that? And in this case, those amendments and the amendment back to 1013 that added the TEOS limitation was deemed by the examiner to be moot. In fact, he said it doesn't matter whether you are claiming a novel process. Part by process claim, we're looking at the device. What are you referring to when you say the examiner considered it moot? I am referring to the appendix at pages 622 and 623. That quote, the examiner says, an old product produced by a new method is not patentable as a product. And he goes on to say that matter given weight and claims drawn to structure having a process of making segments are those present in the final product. And so in order to determine, and one thing that's important here is that- After that rejection, the applicant continued to argue that he was wrong and that they weren't structurally the same and that the claims should be allowed, which had the TEOS oxide layer. And one thing that's very important to keep in mind here is that the applicant never claimed that the TEOS, the use of the TEOS reacted in part with novel physical characteristics. Well, you say that, but that's not how I read the prosecution history. The whole statement in one of them is what I read to you earlier. For example, claims 13 and 14 were actually never rejected based upon PEEQ. Only a different claim was rejected based upon PEEQ. So there was no recapture of subject matter that was relinquished in order to overcome a rejection on PEEQ because PEEQ was never used by the examiner to reject claims 13 and 14. So if there is never prior orbits overcome by an argument, then you're not recapturing anything because it was never relinquished. But there was a rejection on a different claim, an amendment made to insert the TEOS limitation in that claim, and the arguments were made to overcome that rejection. Well, do those arguments apply with respect to the limitation that appears in other claims as well? No, because as the court said in Kim v. Calabra, you have to look as to whether or not that amendment was patentably significant. And in this case, it was not because other claims at the time actually included the TEOS limitation. So the rejection was not. The TEOS limitation was not added, for example, to claim 13, to overcome a rejection by adding the TEOS limitation. The rejection stood with claims that only had the TEOS limitation in it. Rather, the arguments that were made and the arguments that ultimately prevailed at the court was that the device that was created by the process of depositing the toluene oxide. So what was novel in this case is that I'm confused. You had two claims, 13 and 14. One of them started out with the TEOS limitation. The other one was amended to add the TEOS limitation. That's correct. So are you saying that if you started out with a limitation and argued that that created a patentably distinct invention, that that wouldn't invoke the recapture rule? Are you arguing that? Are you saying because the TEOS limitation was in there from the beginning that you can't have a surrender? I'm not saying that as a court. I said it because I think what you have to look to is what did the patent office do in response to the amendment. I think the amendment illustrates the fact that the attorney did not appreciate the full scope of the claim because he added the TEOS limitation to claim 13, and then following his addition of that limitation, the examiner says, look, that doesn't have anything to do with patentability. That was the response of the office, was to say that the addition of TEOS, that may be a novel process, but it doesn't affect your patentability of the device claims. So if the applicant argues this makes it patentably distinct, this is what's important, this is why you added the limitation, you're saying it must be examined or agrees with the applicant in that respect, there's no surrender? Well, in this case, your argument, the applicant said, well, what's the answer to my question? I would say the answer to your question is adding Kim versus ConAqua Foods. If, in fact, that amendment was not patentably significant, then it cannot form the basis for a recapture argument. Kim is a different case. You're arguing the case you wish you had rather than the one you do. The problem is we have to deal with the prosecution history in the case that's before us, and you've made arguments throughout, it seems to me, both before the examiner and before the board asserting some patentable significance of the TEOS limitation. The examiner may not have agreed with that, but that was the argument pressed, and it seems to me that that triggers the recapture rule directly without getting into the question of whether the surrender in the parent had any effect. Well, the opinion in Kim, however, says that, if I may quote, while the phosphate limitation was added at the same time, the prosecution history does not indicate that Kim added that limitation in particular in order to overcome the obviousness rejection. Significantly, the examiner had previously rejected claims of the original application that included phosphate, and noted that the phosphate salt limitation there was not patentably significant. That's extremely analogous. In fact, I don't know. I mean, if not analogous, if the thing was added here to create a patentable distinction and that was what was argued to the examiner, that wasn't the case in Kim. Right. Well, here, for example, in Kim, respectfully, the court noted that the examiner found that that was not patentably significant. It actually said that. That's what happened here as well, because the examiner said, well, if you're trying to sell me that your process is novel, that's not patentably significant to your device claim. You're claiming a product. And the whole reason we have product-by-process claiming is because you can't describe the unique structural characteristics of the safety code. Well, what do you understand the examiner or the board has done here to, when it eventually allowed the claims? The examiner did eventually allow them. No, it wasn't for the board. The board found that there must have been some unique characteristics as a result of the process. Now, I use process broadly, because that's what the board said. But that process, in fact, the particular steps that we're most relied upon, was the low pressure chemical vaporization. That's what you say, but you argued the TEOS limitation also. We did not ever argue that TEOS imparted unique structural characteristics. I read the prosecution history differently. If you argued TEOS, then the district court was correct here, right? You're right, the district court, we believe, was wrong for several reasons. For one, the district court said that we traversed the restriction requirement. That is clearly erroneous. The district court actually was of the opinion that the two inventions were not patently distinct, and I think that was part of the error of the district court. But we've been discussing the effect of the prosecution history of the 584, fired by the ISAC, and not the question of the restriction and the effect, if any, of the prosecution of the parent. I think the reason for the error of the district court is that the district court did rely heavily on the prosecution of the earlier 744 patent and found that it, and I quote, does not contest, but it added a TEOS limitation specifically to the process. Well, since both the district court and the district relied on the history of the process patent, what difference does that make when we're talking about summary judgment? Because the district court didn't carry that into the decision. Well, that's the normal review. Doesn't make any difference whether the district court did it or not. Well, I think it does in the sense that the errors of the district court resulted and could be explained by this apprehension. Are you arguing that what you did in the 774 prosecution isn't relevant to the prosecution of the process by product, product by process claim? We're arguing that certainly because it's part of the family, of the patent family, it should be reviewed, but ultimately it ends up not being relevant because there's no subject matter that was claimed in the product claims that was ever surrendered in the process claims. You're well into your rebuttal. Would you like to reserve it as you are? Let's hear it from the other side. Ms. Carruthers, good morning. Good morning. May it please the court, my name is Joanne Carruthers and I represent FST. I'd like to start off by pointing out that when we repeatedly surrendered the use of non-TEOS reactants while prosecuting the patents in this family, including with its amendments and arguments in prosecuting the 585 patent, which is what led directly to the reissue claims. It also surrendered it as it admits in the 774 patent. Does that matter because what they did in the 774, which was a method patent, does that carry over in some magical way to the 585? Maybe it doesn't always. In this case it should. As you pointed out, let me answer your question first. Why? Because one of the first things that the patentee did when prosecuting the 774 was in this particular instance draw a one-to-one correspondence between the process claims pre-TEOS and the product by process claim pre-TEOS. Specifically, the patentee told the examiner, the process as claimed cannot be used to make another materially different product, nor can the product as claimed be made by another materially different process. The restriction requirement is directed to sort of a whole separate question of principally the convenience of the patent office in examining applications, and quite often examiners make restriction requirements. Quite often they are traversed. Quite often the examiner makes the restriction final, and then the parties go forward and proceed either filing a divisional or a continuation or whatever that doesn't necessarily impart any significance other than the convenience of the office in examining what the office perceives as distinctly different inventions for purposes of examination. I understand, Gerardo. We agree that it's an administrative tool often when there's a different There are a wider search for one part of the client than there is for another side of the client. And here in MDO, this court specifically said it's important to look at the entire file history, and based on what's said, you decide whether or not a surrender in one application applies to the other. Here we believe it should. So as your honors were pointing out when the appellant was arguing, there were surrenders in the 585 as well. Unquestionably surrenders. So there's numerous surrenders here where they gave up kiosk. You can define the district court's finding of invalidity based on any of them. For example, in the 585, these theories specifically relied on the process limitation that involved kiosks to overcome prior art. But it had to because the examiner had found the product in prior arts they had to turn to the process limitations as imparting some sort of novel structure. And they relied on the same declarations of Mr. Owen, two of which they submitted in the 774, and a new declaration, a third one they submitted in the 585, to say that the tunneling layer according to their present invention is formed using the process facts including independent criteria, and it's not structurally the same as the tunneling oxide layers to provide for the prior art. Well, for a product by process claim, what difference does it make what process is used in terms of prior art? The question is whether the prior art discloses the product, correct? In looking at the prior art, it is whether or not the prior art discloses the product. Regardless of how that prior art product might have been produced. That's correct. But if you want to overcome the rejection as to that art, you then must rely on the process limitations. Once you rely upon the process limitations and limit them in order to overcome that prior art, you have made a surrender as to that limitation. No, no, no. That general statement's not accurate. It would only be true if you could show that the process limitation imported a structural difference. Sure enough, Your Honor. If you rely upon it to show that it imported a structural difference, then you have relied upon it to overcome that prior art. And when we go to recapture analysis, recapture analysis focuses on the scope of the claim. And the scope of the claim here before reissue, Zyphor only had the right to exclude competitors or the public from making a device using the process as claimed. Because to exclude someone from using it, they have to be using every limitation, including the process limitations. But after reissue, the recapture, or attempted to recapture, that exact scope that they gave up when they had to rely upon the TDOF limitation to overcome prior art, because after reissue, Zyphor would be able to prevent someone from using any reactant, including non-DOF reactants, to make the client's device. And that is where the law for recapture analysis. And to point out a few, I know we pointed them out in our briefs, but to point out a few specifics of where they specifically relied on TDOF to overcome the prior art and relied upon that process limitation, they specifically pointed out in the appendix 661 that forming the TDOF timing layers in the manner claimed increases the total charge which can be conducted through the dielectric layer by an order of magnitude. They also claimed that this structure differed from prior art because this TDOF deposited layer coats all the surfaces and thus fills in the pinhole defects, providing a less effective result. And there's no doubt they relied upon the TDOF limitation when they argued against the peak reference as well. The peak reference had specifically talked about three different ways of forming a sorbent dioxide layer. It talked about using HPO in a deposited manner, LPCDD using a chemical used with HPO deposition. It also talked about LPCDD with TEOS, and it talked about a thermal technique. But Peake found that using TEOS had the worst performance for an oxide layer. Well, in prosecuting the 585, and including in front of the Board of Patent Appeals, Douglas seems on that finding to argue that Peake taught away from using TEOS and using the other declaration said that when skilled in art would not have been motivated to use TEOS and that the successful use of TEOS as an oxide finish for the double-E chrome toning layer was a surprising and unexpected result. And because it was surprising and unexpected, the claims were not obvious in light of the prior art. By doing so, when you apply the standard three-step test for recapture analysis that this court had always applied, and here, as I've already conceded that steps one and three are met, when you apply step two, the test for surrender is the objective observer test, where the objective observer concludes that they had made amendments and arguments to overcome prior art in order to gain allowance with the client. That's exactly what they did here. Does it matter whether those arguments were successful or not? No, because the public is on notice, and the recapture doctrine is about the rationale behind it, or at least one of the rationales behind it is that it's a public reliance standard. And when you make these statements to the patent office and the board to prosecute these patents, the public is entitled to lie, and an objective observer would conclude that these arguments were made to gain allowance. And what if they're made to argue that they're not in a situation where, for example, the board might say, you know, we're not convinced by those arguments, but here's another reason for the allowance. I know that didn't happen here. The board's decision is somewhat ambiguous as to what it's saying, but suppose the board explicitly said, well, we don't find that convincing. We're not going to rely on that. We're going to rely on something else. Well, one of the things that this court said in the NBO was that when a patentee's argument emphasizes one feature, it cannot cure a surrender to other features. So the actions of the patentee here, I believe, are what really matter. As you said, that decision as to how far it goes does not have to be decided today, because those aren't the facts in front of you. But in NBO it was discussed, and I think you would also find that in TANU, the applicant had raised six different arguments to gain allowance, but recapture was found because they had tried to recapture one of them. Now, as to the next question, which maybe more directly answers your question, which was, so what if it didn't work? I do believe what they said and what the public observes is more important than whether they were successful. In other words, you're saying how the PTO responded to that argument is not the test. No, I do not believe that is the test, and we've seen in particular in other contexts, such as the similar context of prosecution in Dreyfusdal, this court has said before that it doesn't matter whether or not the examiner was persuaded by the argument. What matters is that it's in the public records. What I was going to point out was, the guy who tries to argue that they used detronteoxoxide or deoxyribonucleic acid as a sure hand for any reactant, that argument is relied by their own arguments in response to Peek, which talked about more than one reactant. So they clearly were distinguishing an own separation in their argument. They meant deox when they said deox, and I believe that that is fairly clear. The other thing I would point out is that this is just not error as contemplated by the re-entry statute. The patentee clearly knew, just as the court found in MBO, the patentee clearly knew how to claim with deox, without deox. We saw that originally in the 774 application, which for the reasons that I'll briefly relate also occurred, when the first five applications, claim one was broad, we did not limit to claim two, to deox. Claim two was narrow. It depended on claim one and limited it to deox. We see the same thing in the 585. When we originally submitted what at that time was over claim 13, they took it from the original application that led to the 774 and offered claim 13. It did not have deox. But at the same time, in a preliminary amendment that was submitted contemporaneously, they submitted claims 14 through 20 and adapted all those to include deox. So the same thing happened with both applications. They added deox to limitations where it wasn't already there and then relied upon it for either amendment or argument to overcome the prior art, and that is why reCAPTCHA must prevent the validity of these two claims, rule 12 and 13, as they issued in the 370 reissue. This clearly demonstrates this is not the type of error that was contemplated that could be corrected by the reissue statute, and therefore we ask that this court, upon the district court's finding, if it reaches the merits of this decision, as you know, we'll see it on our briefs as to the motion to dismiss. But an objective observer would conclude that the non-teox reactants were surrendered to overcome prior art, that reissue claims attempt to recapture that exact same subject matter as the same limitation, and therefore we believe this court should affirm the invalidity of claims 12 and 13. Thank you. Thank you very much. Mr. Bradwell. Thank you. I think what's important to keep in mind here is the standard and the burden of proof. I believe it relies extensively on the reasonable observer standard, or the objective observer, and suggests that that somehow lowers the standard. The standard is that the party challenging the patent must show that the captured subject matter by clear and convincing evidence. The court said that in Kim v. Conagra Foods, and actually cited to the I4I Supreme Court opinion to support that. Now, the argument was made below that the clear and convincing standard didn't apply to recapture, that it was a lower standard, and you could look just for substantial evidence of what the objective observer might view. And this is where it comes into play because of the ambiguity of what happened at the board. In the arguments that were made to the board, TEOS was never singled out as a part of unique characteristics. In fact, you can read through the arguments at pages 659 and 660 and before that, and in each case, what's referenced is the process and the overall process. In fact, the peak reference actually distinguishes from this case. Sorry if that makes no sense. Yes, please. In that, peak showed that TEOS did not improve the dialectic layer. And the fact is that that demonstrated that TEOS wasn't contributing to the strength of the device. It wasn't the TEOS that was doing the trick. It was something else, and it never was TEOS relied upon as the element on which the process evolved with this. Thank you very much. We appreciate your arguments. The case is submitted. Thank you very much. Thank you. Thank you.